UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SELWYN LAMAR TALLEY,<br><br>　　　　　　　　　　　Plaintiff,<br>v.<br>CITY OF NORTH LAS VEGAS, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 2:22-cv-01115-ART-BNW<br><br>ORDER ON MOTIONS FOR DEFAULT, QUASHING SERVICE, DISMISSAL, AND SANCTIONS<br><br>(ECF Nos. 69, 73, 77, 78, 81, 83) |

Plaintiff Selwyn LaMar Talley seeks default judgment against allegedly unserved Defendant Pamela Ojeda, retired police chief in the City of North Las Vegas ("CNLV"). (ECF No. 69.) Ojeda moves to dismiss Talley's claims against her and seeks sanctions under Rule 11 and the Court's inherent authority against Talley and his counsel. (ECF Nos. 73, 78.)

I. **Factual and Procedural Background**

The Court incorporates its description of the underlying factual dispute from its previous order. (ECF No. 70.)

The instant dispute concerns service of process on retired CNLV police chief Pamela Ojeda. Talley, carrying out his lawsuit *pro se*, attempted to serve Ojeda at the CNLV City Attorney's office on June 13, 2022. (ECF No. 74-1 at 1, 8.) The office refused to accept service on behalf of Ojeda because she had retired. (*Id.* at 8.) Talley learned through a friend that attorney Jill Garcia of Hone Law represented Ojeda in a separate lawsuit. (*Id.* at 1.) Talley hired the Las Vegas ex-officio constable's office to carry out personal service on Jill Garcia, whom Talley called Ojeda's "attorney of record." (ECF No. 69-1 at 3.)

The constable's office gave Talley an affidavit of service stating that the process server gave Talley's summons and complaint to Pamela Ojeda "for service on a business or entity" by "[d]elivering and leaving a copy with Eric Hone/Jill

1    Garcia" at Hone Law's business address. (ECF No. 69-1 at 2.) In his declaration,
2    Talley states that no one at Hone Law refused service, unlike the CNLV city
3    attorney's office. (ECF No. 74-1 at 2.)

4          Hone Law disputes that Garcia was authorized to receive service of process
5    for Ojeda and whether Garcia was personally served. Leslie Godfrey, an attorney
6    at Hone Law, provided a declaration stating that she reviewed Hone Law's records
7    and found no evidence of Ojeda retaining Garcia outside of the separate case that
8    Talley had heard about. (ECF No. 73-1 at 3.) She also found nothing in Hone
9    law's records reflecting that Garcia or Eric Hone personally accepted the service.
10   (*Id.*) Garcia unexpectedly died in February 2024, (ECF No. 73-1 at 2), but her
11   colleague Eric Hone stated in a declaration that Garcia generally worked from
12   home unless present for a work event, and that the law firm's records "clearly
13   indicate that Ms. Garcia was not present at the Hone Law offices when the
14   Constable's office claims to have made service." (ECF No. 82-4 at 3.) The
15   declaration further states that "it is the firm's practice . . . to not accept service
16   for any person or entity unless we have advance permission to do so." (*Id.*)

17         On June 30, 2022, a paralegal at CNLV emailed Mr. Talley to explain that
18   the city had received authority to accept service on Ojeda's behalf, and that Talley
19   was now "welcome to serve [Ojeda] at our office now. We will accept service." (ECF
20   No. 74-1 at 8.) On the same day, Talley responded "I will re-serve Ojeda . . . at
21   your office." (*Id.*) Talley did not do this and instead "advised [the paralegal] that
22   he had already served . . . Ojeda." (ECF No. 74-1 at 2.) Ojeda has provided a
23   declaration stating that in June 2022, she had not retained Garcia or anyone at
24   Hone Law to represent her in this action, nor had she authorized anyone at Hone
25   Law to accept service of process in this case on her behalf. (ECF No. 82-1 at 2.)

26         The served Defendants removed this case in July 2022. (*See* ECF No. 1.)
27   Defendants later filed an errata saying "proper service has not been effectuated
28   on Pamela Ojeda." (ECF No. 4 at 1.) Soon after, Talley attempted to serve other

defendants in an overlapping public-records request his amended complaint, and then-defense counsel in both that case and this case told him that for e-filing an amended complaint, he did not need to use a process server. (ECF No. 84-1 at 6.)

Several months later, in August 2023, Talley retained counsel. (ECF No. 48.) Talley's counsel confirmed in a stipulation that Ojeda had not been properly served, though she argues now that this was a mistake based on opposing counsel's statement. (ECF No. 61 at 4 n.1; ECF No. 74-2 at 1.)

Ojeda, after retaining Hone Law, filed a motion for sanctions under Rule 11 and complied with the Rule's safe harbor provision. *See* Fed. R. Civ. P. 11(b), (c).

## II.  LEGAL STANDARD

A claim may be dismissed for failure to provide sufficient service of process. *See* Fed. Rs. Civ. P. 4(m), 12(b)(5); *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) ("district court has discretion to dismiss an action or to quash service"). Without sufficient service of process or waiver, a court may not exercise jurisdiction over the "party that the complaint names as defendant." *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see also Strong v. Countrywide Home Loans, Inc.*, 700 Fed. App'x 664, 667 (9th Cir. 2017) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). The plaintiff bears the burden of establishing the validity of service in a challenge under Rule 12(b)(5). *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

## III.  ANALYSIS

The Court considers whether Talley carried out sufficient service of process, whether Talley should be granted an extension of time to serve Ojeda, and whether sanctions against Talley are warranted.

### A. Service of Process

The parties dispute whether Garcia was an agent authorized to receive

3

service on behalf of Ojeda, whether Garcia had apparent authority to accept service on behalf of Ojeda, and whether Garcia or Hone Law were obligated to state that they did not accept service on Ojeda's behalf, like CNLV had.

"When a case is removed from state court to federal court, . . . whether service of process was sufficient prior to removal" is a question of state law. *Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017). The allegedly insufficient service took place before this case was removed, so state law governs this question.

Nevada law permits service of process on an individual "by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." NRCP 4.2(a)(3). "An agent authorized by appointment" means an agent actually appointed by the defendant to receive service of process. *Foster v. Lewis*, 372 P.2d 679, 680 (Nev. 1962). "Where the evidence that the person served was not authorized by the defendant to receive service of process is uncontradicted . . . such denial of authority must be taken by the court as true." *Id.*

Ojeda has provided evidence that Garcia was not authorized to receive service of process on her behalf. Without evidence to contradict this, the Court must find service insufficient. *See Barber v. Barber*, 503 P.3d 1171 at *2 n.4 (Nev. 2022) (unpublished disposition) (service of a civil complaint on criminal lawyer of defendant, whom defendant had not authorized to accept service merits reversal of grant of default in civil case); *Zabeti v. Great Am. Ins. Co.*, 133 Nev. 1096 (Nev. App. 2017) (unpublished disposition) (service insufficient because no evidence showed that the lawyer for defendant's companies "was authorized to accept service on [defendant's] behalf in his individual capacity"). While Hone Law and Ojeda have provided declarations stating that Garcia was never authorized to accept service on Ojeda's behalf and that no one at the office was personally served the complaint and summons (ECF No. 72-1 at 3; ECF No. 82-4 at 3), Talley

4

has provided no evidence showing that Ojeda did in fact authorize Garcia to accept service on her behalf.

Talley argues that Garcia had apparent authority to accept service on Ojeda's behalf because she was representing Ojeda in another case. (ECF No. 74 at 5.) "Apparent authority is that authority which a principal holds [its] agent out as possessing or permits [the agent] . . . to represent [the agent] as possessing, under such circumstances as to estop the principal from denying its existence." *Simmons Self-Storage v. Rib Roof, Inc.,* 331 P.3d 850, 857 (Nev. 2014), *as modified on denial of reh'g* (Nov. 24, 2014). Talley has not shown or alleged that Ojeda held Garcia out as possessing the authority to accept service on her behalf, and this argument is accordingly denied.

Talley also argues that if Garcia "was not authorized" to accept service, then "she should have refused service like the City of North Las Vegas originally did." (ECF No. 74-1 at 3.) Talley does not cite legal authority showing that Garcia had an affirmative duty to tell Talley that service was improper. Additionally, the served defendants notified Talley that Ojeda had been improperly served in their notice of removal. (*See* ECF No. 4.)

Under Nevada law, Talley's service upon Ojeda was improper. Because the Court finds that service was improper, it declines to address the parties' arguments about withdrawing Plaintiff's counsel's stipulation that Ojeda had not been served.

**B. Extension of Time to Serve Process**

In the alternative to finding that service on Ojeda was proper, Talley seeks an extension of time to serve Ojeda.

A court must extend time for service if a plaintiff shows good cause for failing to provide service, and it may extend time if a plaintiff shows excusable neglect. Fed. R. Civ. P. 4(m); *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). Good cause may be shown through facts that "(a) the party that had

to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for a failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984).

Ojeda concedes actual notice of the lawsuit, (ECF No. 82 at 14), but argues that Talley has failed to show a justifiable excuse. *See Hart v. United States*, 817 F.2d 78 (9th Cir. 1987) (lack of justifiable excuse sufficient to fail *Borzeka's* test for good cause). Talley argues that his *pro se* status at the time of filing, the fact that Nevada law prevents sharing police officers' home addresses, and the confusion caused by CNLV initially refusing to accept service for Ojeda justify his mistake. (ECF No. 76 at 5–6.) But while Talley was *pro se* at the time he made the ineffective service, he later retained counsel who could have spotted and corrected the ineffective service over a year before this dispute arose. Talley's *pro se* status at the start of the case do not outweigh this significant delay.

Additionally, the prejudice factors go against finding good cause to extend time to serve Ojeda. This case proceeded for several years, progressed through discovery, and reached settlement without Ojeda. Reviving it now would force defendants to re-open discovery, which can constitute unfair prejudice. *See Lovelady v. Las Vegas Metro. Police Dep't*, 649 F. App'x 358, 359 (9th Cir. 2016) (finding delay prejudicial to defendants because of the "risk that witnesses' memories will fade and evidence will become stale"). Additionally, Ojeda lacks authority to provide Talley with the relief he seeks—his full retirement credentials, which are issued by the acting police chief, not retired ones like Ojeda. (*See* ECF No. 82-1 at 3.)

The Court has broad discretion to extend time for service based on excusable neglect. *See Lemoge*, 587 F.3d at 1198. Courts in this district generally consider "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay;

and (4) whether the movant acted in good faith." *Foley v. Stuart*, No. 2:20-CV-01874-ART-BNW, 2022 WL 17979603, at \*2 (D. Nev. Dec. 27, 2022) (citing *Trueman v. Johnson*, 2011 WL 6721327, at \*5 (D. Ariz. 2011)). The Court finds no excusable neglect because of the danger of prejudice to defendants and the delay of longer than a year despite the several indications that Ojeda had not been served.

### C. Dismissal

The Federal Rules of Civil Procedure govern service of process in federal court and apply to civil actions after removal. *See Whidbee*, 857 F.3d at 1023; *see also Brockmeyer*, 383 F.3d at 801 (applying Hague Convention to determine validity of service, then Rule 4). Rule 4(m) instructs courts to dismiss claims based on improper service of process without prejudice. Fed. R. Civ. P. 4(m). The Court accordingly denies Talley's motion for entry of clerk's default and dismisses all claims against Ojeda without prejudice.

### D. Sanctions

Ojeda argues that Talley's motion for entry of default constitutes a frivolous argument without evidentiary support brought for an improper purpose and seeks its fees incurred in responding to the motion. (ECF No. 78 at 13–17.)

By presenting a pleading or other motion to the Court, a lawyer or party certifies that its action "is not being presented for any improper purpose," that "the claims, defenses, and other legal contentions are warranted by existing law," and that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). A lawyer's actions violate Rule 11 if they are objectively unreasonable. *See Avendano v. Sec. Consultants Grp.*, 302 F.R.D. 588, 591 (D. Nev. 2014) (citing *Smith & Green Corp. v. Trustees of Const. Industry & Laborers Health & Welfare Trust*, 244 F.Supp.2d 1098, 1103 (D. Nev. 2003)). After determining that a Rule 11 violation occurred, a court may grant sanctions, including attorneys' fees. Fed. R. Civ. P. 11(c).

     A party seeking sanctions must provide a "safe harbor" by serving the opposing party its motion for sanctions along with a request to withdraw or otherwise correct the issue within twenty-one days. *See id.* Ojeda and CNLV have met Rule 11's safe-harbor requirement by providing Talley and his counsel a copy of their motion for sanction and a request to withdraw the motion for default at least twenty-one days before filing it. (*See* ECF No. 78 at 13.)

     Ojeda and CNLV argue that Talley lacked a foundation in fact because Talley and his counsel knew that service was flawed. Talley responds that he believes in good faith that he properly served Ojeda. (ECF No. 84 at 7.) The Affidavit of Service from the constable's office is enough of a basis for Talley to have believed that he carried out service on Ojeda. (ECF No. 69-1.) Talley's counsel also argues that because Ojeda had not sworn that she had not authorized Garcia to accept service on her behalf until after Talley's motion for default, she believed—based on the affidavit of service—that Ojeda may have authorized Garcia to receive service on her behalf. (ECF No. 84 at 9.) The Court finds that these representations suffice to avoid sanctions.

     Ojeda and CNLV next argue that the default motion lacked a legal basis, meriting sanction. Ojeda and CNLV cite to their response brief, which cites several cases on service of process under Federal Rule of Civil Procedure 4. (*See* ECF No. 78 at 14 (citing ECF No. 72).) As noted above, sufficiency of service before removal is a question of state law, *Whidbee*, 857 F.3d at 1023, and the confusing nature of the faulty affidavit is enough of a basis for the Court to find Talley's arguments non-frivolous.

     Ojeda and CNLV next argue that Plaintiff's counsel knew service of process was deficient "for more than a year since her appearance as counsel, and for two years since the attempt at service was made." (ECF No. 78 at 14.) Talley's counsel's declaration states that she did not know that Talley had attempted service on Ojeda in the manner that he had until September 2024. (ECF No. 84-

2 at 2.)

Ojeda and CNLV next argue that Talley's motion for entry of default was filed for an improper purpose: extorting additional concessions out of CNLV. (ECF No. 78 at 15–16.) Ojeda and CNLV point to messages from Talley's counsel stating that unless Defense Counsel agreed to exclude Ojeda from a final settlement deal, Talley would garnish CNLV's bank accounts, seek entry of default against Ojeda, and require Defense Counsel to "litigate to set aside" that default. (*Id.* at 16.) As the Court has already found that Talley and his counsel had some—ultimately incorrect—basis to believe service on Ojeda had been proper, the Court declines to hold that Talley's motion for default was filed for an improper purpose. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)) (Rule 11 must "be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy").

Accordingly, the Court denies Ojeda and CNLV's motion for sanctions under Rule 11 or the Court's inherent authority.

## IV.    CONCLUSION

The Court denies Talley's motion for entry of Clerk's Default against Ojeda. (ECF No. 69.)

The Court grants Ojeda's motion to dismiss claims against her without prejudice. (ECF No. 73.)

The Court denies Ojeda's motion for sanctions. (ECF No. 78.)

The Court grants Ojeda's motion for leave to file excess pages (ECF No. 81.)

The Court denies past motions for extensions as moot. (ECF Nos. 77, 83.)

DATED THIS 23rd day of June 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE